UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TONDA WELLS,

    Plaintiff,

v.                                        Case No. 8:18-cv-454-AEP

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.
_____/

## **ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 183). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 109-26). Plaintiff then requested an administrative hearing (Tr. 142). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 41-80). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7-20). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1)**.** Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1970, claimed disability beginning April 7, 2014 (Tr. 12). Plaintiff obtained a high school education (Tr. 19). Plaintiff does not have any past relevant work (Tr. 19). Plaintiff alleged disability due to degenerative disc disease, arthritis in spinal regions, headaches, dizziness, anxiety, asthma, spinal pain, chronic pain, osteoarthritis in hips, bilateral, left side worse, depression, mood swings, crying spells, left arm fracture 2000 near wrist, weakness, sinusitis, left leg swelling muscle/joints, and spasms (Tr. 201).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through October 15, 2005 and had not engaged in substantial gainful activity since April 7, 2014, the alleged onset date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, lumbago, asthma, obesity, anxiety/post-traumatic stress disorder (PTSD), and major depressive disorder (*id.*). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work. Specifically, the plaintiff can stand and/or walk six hours out of an eight-hour day with normal breaks; sit with normal breaks six hours out of an eight-hour day; occasionally bend, stoop, and climb ramps and stairs only; perform no climbing of ladders, ropes, or scaffolds; perform no work around fumes, dust, gases, and noxious odors; Plaintiff requires option the sit and/or stand at will; and limited to routine, repetitive tasks with no semi-skilled or skilled work (Tr. 14-15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that

reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 15). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform jobs existing in significant numbers in the national economy, such as a survey worker, ticket taker, and ticket seller (Tr. 20, 77). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 20).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe

impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

The ALJ, in part, decides Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These Regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment, but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

Plaintiff argues that the ALJ erred by (1) failing to properly consider the opinions of Plaintiff's treating psychiatrist and physical therapist; (2) failing to find Plaintiff's subjective complaints credible; and (3) failing to pose a complete hypothetical to the VE. For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A. Medical Opinions

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations

provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Opinions from physical therapists are not considered acceptable medical sources; instead, they are treated as "other sources." 20 C.F.R. § 404.1513, 20 C.F.R. §§ 416.902, 416.927(c)(1) & (2). An ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P. Opinions from "other sources,"

such as therapists, "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* Further, statements by a medical source that a claimant is "disabled" or "unable to work" constitute opinions on issues reserved to the Commissioner and do not direct that a finding of disabled is warranted. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013) (stating that it is the Commissioner, not a claimant's physician, who determines whether a claimant is statutorily disabled, and a statement by a medical source that a claimant is disabled does not mean that the Commissioner will conclude a claimant is disabled).

### a. Dr. Luis Franco

Plaintiff contends that the ALJ failed to properly evaluate Dr. Franco's opinion. Specifically, Plaintiff alleges that the ALJ failed to address Dr. Franco's GAF score of 50 and his "guarded" prognosis. A GAF score indicates the clinician's subjective assessment of the individual's overall functioning, but does not itself reveal a particular type of limitation and does not constitute an assessment of a claimant's ability to work. *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015); *Ward v. Astrue*, No. 3:00-CV-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008). Furthermore, GAF scores bear no direct correlation to the severity requirements of the mental disorders listings. *See Thornton*, 597 F. App'x at 613; *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 527 (11th Cir. 2015) (citation omitted). In fact, the Commissioner has "declined to endorse the GAF scale for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorder listing." *Wind v. Barnhart*, 133 Fed. Appx. 684, 692 n.5 (11th Cir. 2005) (per curiam) (quoting 65 Fed. Reg.

50746, 50764-65 (Aug. 21, 2000) (internal quotations omitted)). And just like anything else, an ALJ can reject a GAF score if it is inconsistent with the record.

While Dr. Franco was Plaintiff's treating physician, the findings in question were made during the *initial* evaluation. Nevertheless, Dr. Franco's opinion is entitled to great weight unless good cause is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). While the ALJ indeed did not mention Dr. Franco's name throughout his opinion, he stated with particularity that he assigned little weight to the GAF score by noting that the evidence supported a contrary finding and Dr. Franco's opinion was not bolstered by the evidence (Tr. 19). For instance, the ALJ noted that mental examinations were generally within normal limits and that Plaintiff found counseling sessions "boring" (*id.*). Further, the ALJ noted that, during a psychiatric evaluation in May of 2015, Plaintiff was coherent, logical, and relevant (Tr. 17). During that evaluation, the Plaintiff was assigned a GAF score of 50, a score that remained consistent during future sessions (Tr. 18). A GAF score in the ranges of 41-50 suggests "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social occupational, or school functioning (e.g., no friends, unable to keep job.") DSM-IV-TR at 34. However, the ALJ's opinion is abundant with evidence to the contrary. For example, Plaintiff denied any suicidal or homicidal ideation and instead reported attending church, teaching bible study, leading a support group, and having a large support group of friends and family (Tr. 17). Thus, the ALJ properly assigned little weight to the GAF score as, aside from not being endorsed by the Commissioner, it is inconsistent with the record.

Further, Plaintiff's argument that the ALJ improperly evaluated Dr. Franco's "guarded" prognosis is also unavailing. Though the ALJ indeed did not explicitly discuss Dr. Franco's "guarded" prognosis, "there is no rigid requirement that the ALJ specifically refer to every piece

8

of evidence in his decision," so long as the ALJ's decision allows the conclusion that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). Further, while a prognosis is indeed part of a medical opinion,[1] a prognosis does not constitute a diagnosis or limitation upon a plaintiff's ability to work, but is instead a forecast, a mere guess. Here, Plaintiff failed to show how a "guarded" prognosis limits her ability to work. *See* 20 C.F.R. §§ 404.1512, 416.912. As such, the ALJ properly evaluated Dr. Franco's opinion.

### b. Samuel Thompson

Plaintiff then contends that the ALJ failed to properly evaluate Plaintiff's physical therapist Samuel Thompson's opinion. Specifically, Plaintiff alleges that the ALJ failed to accurately describe the findings of the physical therapist upon discharge from a 6-week program. The ALJ discussed Mr. Thompson's opinion by noting that Plaintiff "showed overall improvement of symptoms, including improved sleep, reduced pain level, ability to complete exercises with minimal discomfort, and decreased pain overall with treatment. After six weeks of treatment, the claimant was discharged with a home exercise program." (Tr. 16). Plaintiff alleges that Mr. Thompson opined several things, such as the fact that Plaintiff was still only able to walk 6-7 minutes. However, the record shows that the ambulation tolerance notation, along with the bending to dress lower extremities, sitting tolerance, transfers in/out of bed, bed mobility, driving, and sleeping, was included in the subjective findings section, which contained Plaintiff's *self-reported symptoms*, instead of Mr. Thompson's objective findings (Tr. 399).

---

[1] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

Although Mr. Thompson noted that Plaintiff was no longer progressing at the time of discharge and should return to a physician, as the ALJ expressly noted, Mr. Thompson also discharged the Plaintiff with a home exercise program upon finding that Plaintiff had met her goal of being dependent and compliant (Tr. 16, 400-401). While the ALJ was required to discuss this "other source" opinion, the ALJ did not have to give any considerable weight to it. SSR 06-03P. The ALJ thoroughly discussed the other evidence within Plaintiff's record, including daily activities and medical opinions that showed that, contrary to Plaintiff's allegations, Plaintiff is capable of performing light work with the additional limitations set forth within the RFC (Tr. 18). Plaintiff failed to show how Mr. Thompson's findings limit her ability to work. *See* 20 C.F.R. §§ 404.1512, 416.912. As such, the ALJ properly considered Mr. Thompson's notes and the ALJ's decision is supported by substantial evidence.

### B. Subjective Complaints

As an initial matter, Plaintiff's statements of pain will not alone establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529, 416.929. Plaintiff's diagnosis of or a test result reflecting a condition does not equate to an automatic finding of a disability; it is the effect of a condition or a combination of conditions on Plaintiff's ability to work that determines whether Plaintiff is disabled. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Moreover, Plaintiff bears the burden of proving that her conditions limit her ability to work. *See* 20 C.F.R. §§ 404.1512, 416.912. The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints. As the Court of Appeals explained in *Landry v. Heckler*, the pain standard "require[s] evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain [or symptoms] arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or symptoms]." 782 F.2d

1551, 1553 (11th Cir. 1986) (per curiam); *see Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam) (holding that the pain standard also applies to complaints of subjective conditions other than pain); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) ("[T]here must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that you are disabled.").

If the ALJ discounts Plaintiff's testimony concerning subjective complaints after finding a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms, he must "articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (quoting *Foote lain v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam)). The reasons given for discrediting pain testimony must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam); *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). In evaluating credibility, the ALJ must consider objective medical evidence and other evidence such as a claimant's daily activities, the location, duration, frequency, and intensity of a claimant's pain or other symptoms, and precipitating and aggravating factors. 20 C.F.R. §§ 404.1529(c), 416.929(c).[36] A reviewing court will not disturb a clearly articulated credibility finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*)(citation omitted). While "particular phrases and formulations" are not required when making a credibility determination, there must be more than boilerplate language explaining the ALJ's decision to not fully credit the plaintiff's testimony. *Dyer*, 395 F.3d at 1210-11 (internal quotations and citations omitted).

In the instant case, the ALJ properly applied the pain standard and found, after considering the evidence of record, that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms." (Tr. 15). However, the ALJ also determined that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms were not credible because they were not supported by the record (*id.*). As required by the Eleventh Circuit, the ALJ articulated "explicit and adequate reasons" for rejecting Plaintiff's pain allegations, such as daily activities, the medical record, Plaintiff's statements, work performed during the relevant time period, and noncompliance with treatment (Tr. 12-17). For instance, the ALJ discussed Plaintiff's reports that she is able to drive for approximately thirty minutes, prepare small meals, go to the store, and generally care for her personal hygiene needs (Tr. 13-14). The ALJ also noted her successful participation in a 6-week physical therapy program (Tr. 14). Further, the ALJ noted that Plaintiff reported having a significant other and a large group of friends, living with her parents, having adult children, along with being an active member of the church attending services and volunteering her time as a bible study and support group leader (Tr. 14, 18). In addition, though the Plaintiff reported difficulty concentrating and completing tasks, Plaintiff reported watching TV on/off throughout the day and was able to complete serial 7's without any problems and remembered three objects in five minutes. The ALJ ultimately discredited Plaintiff's vaguely phrased limited daily activities because they cannot be objectively verified with any reasonable degree of certainty (Tr. 17).

Further, the ALJ noted that even assuming *arguendo* that Plaintiff's complaints were truthful, the weak medical evidence, noncompliance with further treatment, and work performed during the relevant time period discredit Plaintiff's complaints. For instance, the ALJ noted that "the record is void of any evidence that the claimant sought further treatment from a

neurologist or orthopedic surgeon" upon completion of physical therapy (Tr. 17). The Plaintiff indeed testified numerous times during the administrative hearing that she was unable to afford further treatment (Tr. 52-53, 57, 67-68). An ALJ cannot rely on "noncompliance as the sole ground for the denial of disability benefits" when the record reflects that a plaintiff was unable to afford such treatment. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). In other words, an ALJ's primary or exclusive reliance on noncompliance for financial reasons is reversible error. *Id.* Nevertheless, an ALJ may discredit a Plaintiff's subjective complaints based on noncompliance, *even when noncompliance occurred due to financial reasons*, if the ALJ's finding is based on other factors as well. *Id.* (finding that the ALJ did not err in discrediting plaintiff's complaints by considering noncompliance with treatment for financial reasons when the ALJ primarily focused on other factors, such as the plaintiff's ability to work despite the impairments). Here, similar to *Ellison*, the ALJ considered Plaintiff's noncompliance with treatment despite the fact that it was due to financial reasons, while also considering numerous other factors, including Plaintiff's ability to work despite the impairments. The ALJ noted that Plaintiff claimed that her injury occurred in 2000, but that she continued to have earnings until 2005, and even in the year 2014 (Tr. 17). "This evidence indicates that the claimant worked with the impairment and worked only sporadically prior to the amended alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." (*id.*). Indeed, any work that a claimant performs during any period in which the claimant alleges disability, even if the work does not rise to the level of substantial gainful activity, may demonstrate that the claimant maintains the ability to perform work at the substantial gainful activity level. 20 C.F.R. § 404.1571; *see Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1984). Accordingly, in setting forth a credibility determination, the ALJ did not err in considering the work Plaintiff performed

during the relevant time period as such work weighed against a finding that Plaintiff's subjective complaints were credible. As such, the Plaintiff did not meet her burden of establishing that the impairments limit her ability to work, and the ALJ properly articulated "explicit and adequate reasons" for finding Plaintiff's subjective complaints not credible.

### C. VE

At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted).

There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy; namely, by applying the Medical Vocational Guidelines ("Grids") or by the use of a VE. *Phillips*, 357 F.3d at 1239-40. Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating the claimant can perform other jobs is through the testimony of a VE. *Jones*, 190 F.3d at 1229. Indeed, exclusive reliance on the Grids is not appropriate under either of

those circumstances. *Phillips*, 357 F.3d at 1242. For a VE's testimony to constitute substantial evidence, however, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson*, 284 F.3d at 1227.

Plaintiff alleges that the ALJ erred by failing to pose a complete hypothetical to the VE. Specifically, Plaintiff argues that the VE's testimony does not constitute substantial evidence because neither hypothetical question mirrored Plaintiff's RFC, particularly emphasizing that it is unclear how the sit/stand option at will would have affected the VE's testimony regarding the availability of jobs in the national economy for Plaintiff to perform.[2] During the administrative hearing, the ALJ posed two hypothetical questions to the VE. The second hypothetical mirrored the Plaintiff's RFC, *with the added need to elevate legs* (Tr. 77). The VE testified that there would be no jobs for the Plaintiff to perform with the added need to elevate legs:

> So I wouldn't be able – I would not be able to give you an example of positions. *The need to elevate legs it –* in that fashion, your Honor, work stations just – first of all, are not set up, designed to really allow for a person to – to do this and stay on task effectively. To find an employer to allow this or to have this happen would really be an accommodation on the part of the employer. So at the light level or sedentary really I really would not be able to give you examples of positions for that person (Tr. 78) (emphasis added).

As the VE solely focused on how the need to elevate legs would affect the jobs available, the ALJ inquired to ensure that the DOT fails to address a sit/stand option at will limitation for the available jobs (Tr. 78). The VE agreed that, while the DOT indeed does not address that limitation, "with a sit/stand option without the elevation of the legs a person would be able to

---

[2] Plaintiff does not contend that the RFC or hypothetical posed to the VE should have ultimately included the need to elevate legs. An issue is deemed waived if a party fails to argue it on appeal. *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 (11th Cir. 1989). Regardless, the ALJ properly noted that the entire record reflects that no treating physician opined that the claimant needed to elevate her legs (Tr. 18).

perform" the jobs cited beforehand, based on the VE's professional experience and prior conversations with other VE's, and that the unavailability of jobs was based "more towards the elevation of the legs." (Tr. 78).

While the Court acknowledges that Plaintiff is technically accurate that neither hypothetical posed to the VE mirrored the RFC, in that limitations were either taken out (first hypothetical) or added (second hypothetical), the Court is satisfied that the record when viewed in its totality is unambiguous that a person with Plaintiff's RFC limitations could perform the jobs of survey worker, ticket taker, and ticket seller (Tr. 77-78). In light of this, reversing and remanding based on the ALJ's error, if any, would be a "wasteful corrective exercise." *See, e.g.*, *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (declining to remand "for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision").

### a. RFC

The Plaintiff also contends that the ALJ erred because the hypothetical posed to the VE failed to include her mental limitations due to the RFC's vagueness and lack of comprehensiveness pertaining to her mental limitations. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record and will consider all of

the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3).

"Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Further, "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). According to the ruling, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at *5. Therefore, in denying disability benefits, the evidence must show that the claimant can perform work on a regular and continuing basis.

Specifically, Plaintiff claims that the ALJ erred because mental limitations for anxiety/post-traumatic stress disorder (PTSD), which the ALJ found were severe impairments, were not included in the RFC (Tr. 12). Plaintiff further claims that the RFC limitation of "due to depression, she is limited to routine, repetitive tasks with no semi-skilled or skilled work" does not suffice to account for anxiety/PTSD (Tr. 15). Nevertheless, an ALJ is only required to include "concrete consequences" of a plaintiff's impairments, rather than the actual diagnoses/impairments in the hypothetical posed to the VE. *England v. Astrue*, 490 F.3d 1017, 1023 (8th Cir. 2007). Plaintiff argues that the ALJ failed to account for her allegations regarding self-isolation, chronic pain, panic attacks, frequent crying spells, inability to cope with everyday stressors, inability to concentrate and remember when self-isolated or under stress, and her ability/inability to be around other people. However, an RFC limitation to unskilled work, as here, accounts for a rating of moderate difficulties in concentration, persistence, or pace when the record shows that the claimant can perform unskilled work, and the record here shows she can perform at least unskilled work. *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017); *Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 712-13 (11th Cir. 2015).

Further, despite Plaintiff's allegations, the ALJ took into account Plaintiff's ability to be around people as the ALJ noted that Plaintiff reported having a significant other and a large group of friends, living with her parents, having adult children, along with being an active member of the church attending services and volunteering her time as a bible study and support group leader (Tr. 14, 18). These activities suggest that Plaintiff is not as limited as she alleges in social functioning. Thus, Plaintiff failed to meet her burden that her anxiety and PTSD limit her ability to work and that the RFC was vague and incomplete as pertaining to her mental limitations. *See* 20 C.F.R. §§ 404.1512, 416.912. The ALJ's decision was thus based on substantial evidence and employed proper legal standards.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 25th day of March, 2019.

*[signature]*

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record